**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAN 1 5 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO OBTAIN )
RECORDS, LOCATION INFORMATION, )
INCLUDING PRECISION LOCATION ) No. 4:19 MJ 1001 JMB
INFORMATION, CELL SITE )
INFORMATION, AND OTHER ) **FILED UNDER SEAL**
SIGNALING INFORMATION )
ASSOCIATED WITH THE CELLULAR )
TELEPHONE HAVING THE NUMBERS )
314-203-8398                )

### AFFIDAVIT

I, Joe McKinney, your Affiant, am a Detective with the St. Charles County Police Department currently assigned as a Task Force Officer with the United States Drug Enforcement Administration (DEA) duly appointed according to law and acting as such.

#### INTRODUCTION

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), St. Louis Division, and have been since January 2017. I am a sworn police officer since August 2005 and have served with the Ballwin Police Department. During my time as a Ballwin Police Officer, I was detached to the St. Louis County Multi-Jurisdictional Drug Task Force. Most currently, I am employed as a police officer by the St. Charles County Police Department.

2. During my tenure with DEA, the St. Louis County Multi-Jurisdictional Drug Task Force and as a Task Force Officer, I have been assigned to investigative teams for numerous complex investigations of drug-trafficking organizations dealing in heroin, cocaine, marijuana, and other controlled substances. These investigations have resulted in the seizure of heroin,

methamphetamine, marijuana, other controlled substances, and weapons. I am familiar with and have utilized normal methods of investigation, including, but not limited to, visual surveillance, electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and the use of court-authorized wire intercepts. My training with the Drug Enforcement Administration and as a sworn police officer has included specific training directly related to the aforementioned investigative techniques.

3. The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to locate and monitor the location of a cellular telephone as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter.

4. Upon information and belief, and as explained in greater detail below, the Sprint cellular telephone bearing number (314) 203-8398, a device subscribed to Clayton Huston, address of 3511 Wisconsin Avenue, St. Louis, Missouri 63118, hereafter subject cellular telephone #1 which is being utilized by Steven GARNER, hereinafter "GARNER" has been used, and is presently being used, in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(1) and 846 (hereinafter referred to as the "subject offenses") by Steven GARNER and others known and unknown.

5. The present affidavit is being submitted in connection with an application of the Government for a warrant and order authorizing agents/officers of the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, to obtain location information,

2

including precision location information, cell site location information, and other signaling information, including pen register information, in an effort to locate and monitor the locations of **subject cellular telephone #1.**

6. Your affiant further states that there is probable cause to believe that the location information associated with **subject cellular telephone #1** will lead to evidence of the **subject offenses** as well as to the identification of individuals who are engaged in the commission of those criminal offense and related crimes.

### INVESTIGATION AND PROBABLE CAUSE

7. The source of your affiant's information and the grounds for his belief are as follows, and based on your affiant's personal knowledge, knowledge provided to your affiant by other officer(s) of the United States Probation Office, the United States Marshal Service, as well as information provided by a Defendant (hereinafter referred to as "Defendant"), following her arrest in September 2018.

8. On September 27, 2018, the United States Probation Office conducted a search of Steven **GARNER's** and Defendant's residence located at 4419 Dewey Avenue, St. Louis, Missouri 63116, in accordance with their supervised released conditions by the sentencing judge. During the search of their residence, Defendant admitted that **GARNER** resides with her and that they are both on the lease of the residence. Defendant is currently under supervision with the United States Probation Office in the Eastern District of Missouri. In addition, during the search of the residence, the search team found numerous personal items that belonged to **GARNER.** During the search of the residence, the United States Probation Office discovered and confiscated drug paraphernalia, approximately 52.5 grams of suspected methamphetamine, two firearms

(Ruger LCP .380 handgun and Walther PPX 9mm handgun), cell phones, one tablet, and US currency. As a result, Defendant was taken into custody for her probation violation.

9. On January 3, 2019, Defendant participated in a proffer at the Federal Courthouse at the Eastern District of Missouri. While speaking with Defendant, she stated that she and **GARNER** are in a romantic relationship and she is currently pregnant with his child. Defendant stated she contacts **GARNER** at the **subject cellular telephone #1.** Defendant further stated **GARNER** is currently receiving approximately three (3) to five (5) pounds of methamphetamine every couple of days from a Source of Supply (SOS) in Arizona. Defendant stated, once **GARNER** received the methamphetamine, he would break it down into various quantities for sale. Defendant also stated **GARNER** would utilize multiple cellular phones at any given time. During the proffer, Defendant stated **GARNER** was residing with his friend, Chris Herbert.

10. **GARNER** has an extensive criminal history to include Unlawful Use of Weapon, Possession of Controlled Substance, Assault 2nd Degree, Possession of Drug Paraphernalia and Traffic in Drug 2nd Degree. In addition, **GARNER** has an outstanding arrest warrant through the United States District Court of the Eastern District of Missouri for a probation violation. Recently, **GARNER** was involved in a separate DEA investigation in which **GARNER** arrived at a residence that was later served with a federal search warrant regarding the distribution of methamphetamine.

11. Administrative subpoenas served to Sprint for phone records revealed the subscriber address for **subject cellular telephone #1,** was 3511 Wisconsin, St. Louis, Missouri 63118. According to law enforcement databases, it is a past known address used by **GARNER**. An individual currently incarcerated in the Missouri Department of Corrections, by the name of

4

Clinton Huson, has a past known address of 622 Courtois, St. Louis Missouri, which is also an address know to law enforcement that was used by **GARNER**. Law enforcement believes the subscriber name for **subject cellular telephone #1**, Clayton Huston, was derived from the name Clinton Huson and is not a real person. According to law enforcement databases, the name Clayton Huston is not associated with the address 3511 Wisconsin, St. Louis, Missouri 63118. According to the State of Missouri Department of Revenue, investigators were unable to locate the name Clayton Huston.

12. I know from my training and experience, that is common for drug traffickers to use fictitious names and to utilize multiple phones to compartmentalize their communications between individuals in an attempt to insulate themselves from detection by law enforcement.

13. Investigators obtained toll records for **subject cellular telephone #1**. An analysis of those records indicated **subject cellular telephone #1** was in contact with an Arizona based telephone number from early December 2018 to early January 2019. Administrative subpoena served on SPRINT in regards to the Arizona based phone number in contact **subject cellular telephone #1** confirmed through toll analysis that the Arizona based phone number is likely located and being used in Arizona.

14. During a recorded prison telephone call to **subject cellular telephone #1**, **GARNER** explains to the caller that he just paid eighteen hundred dollars for a "whole one". **GARNER** then stated his "homeboy" just got out of jail in Arizona. Based on my training and experience, when **GARNER** explains that he just paid eighteen hundred dollars for a whole one, I believe **GARNER** is referring to pound quantity of methamphetamine. Additionally on this recorded phone call, there was an advisory played during the beginning of the phone call and

periodically throughout the call explaining that this phone call is from a correctional intuition and may be subject to recording and motoring at any time.

15. The investigation to date, including the above information, illustrates that **GARNER** is utilizing **subject cellular telephone #1** to facilitate drug trafficking activities, including the distribution of methamphetamine within the Eastern District of Missouri. The PLI would assist investigators in identifying co-conspirators, identifying possible locations where drugs and drug proceeds are stored, discovering assets purchased with drug proceeds, and methods used by members of the organization in conducting their illegal activities. This knowledge would assist law enforcement in collecting/seizing evidence of the **subject offenses**.

16. Based on the investigation to date, your affiant states that there is probable cause to believe that **subject cellular telephone #1** is being used in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Section(s) 841(a)(1) and 846 (the **subject offenses**). It is critical that the investigative team be able to locate and monitor the movements of **subject cellular telephone #1** thereby assisting in the identification of the co-conspirators and the seizure of controlled substances. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

## INVESTIGATIVE CONSIDERATIONS AND TECHNIQUES

17. Based on my knowledge, training, and experience, as well as information provided by investigators with specialized experience relating to cellular telephone technology, I am aware of the following facts and considerations:

A. Wireless phone providers typically generate and retain certain transactional information about the use of each telephone call, voicemail, and text message on their system.

Such information can include log files and messaging logs showing all activity on a particular account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or other addressing information associated with particular telephone calls, voicemail messages, and text or multimedia messages.

B.   Wireless phone providers also typically generate and retain information about the location in which a particular communication was transmitted or received. For example, when a cellular device is used to make or receive a call, text message or other communication, the wireless phone provider will typically generate and maintain a record of which cell tower(s) was/were used to process that contact. Wireless providers maintain information, including the corresponding cell towers (i.e., tower covering specific geographic areas), sectors (i.e., faces of the towers), and other signaling data as part of their regularly conducted business activities. Typically, wireless providers maintain records of the cell tower information associated with the beginning and end of a call.

C.   Because cellular devices generally attempt to communicate with the closest cell tower available, cell site location information from a wireless phone provider allows investigators to identify an approximate geographic location from which a communication with a particular cellular device originated or was received.

D.   Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The

provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers.

    E.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscriber's full name and address, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscriber's Social Security Number and date of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscriber. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

    F.    Providers of cellular telephone service also typically have technical capabilities that allow them to collect and generate more precise location information than that provided by cell

8

site location records. This information is sometimes referred to as E-911 Phase II data, GPS data or latitude-longitude data. In the Eastern District of Missouri, such information is often referred to as "precision location information" or "PLI" data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by attempting to triangulate the device's signal using data from several of the provider's cell towers. Depending on the capabilities of the particular phone and provider, E-911 data can sometimes provide precise information related to the location of a cellular device.

18. In order to locate **subject cellular telephone #1** and monitor the movements of the phones, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may need to employ one or more techniques described in this affidavit and in the application of the government. The investigative agency(ies), and other authorized federal/state/local law enforcement agencies, may seek a warrant to compel T-Mobile, Verizon, any telecommunication service providers reflected in Attachment 1, to include providers of any type of wire and/or electronic communications (herein incorporated by reference), and any other applicable service providers, to provide precision location information, including Global Position System information (if available), transactional records, including cell site location information, and pen register and trap-and-trace data.

19. None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cell site location monitoring typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant

based on probable cause should not limit the use of the requested investigative techniques to daytime use only. Accordingly, the investigative agency(ies), and other authorized federal/state/local law enforcement agencies, request the ability to employ these investigative techniques at any time, day or night.

20. The monitoring of the location of **subject cellular telephone #1** by one or more of the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

## CONCLUSION

21. Based on the above information, there is probable cause to believe that **subject cellular telephone #1** continue to be used to promote and facilitate a conspiracy to distribute controlled substances and the requested authorization would provide relevant evidence of the conspiracy. There is likewise probable cause to conclude that locating and monitoring the movements of **subject cellular telephone #1** will lead to the relevant evidence concerning violations of Title 21, United States Code, Section(s) 841(a)(1) and 846.

_1-15-2019_
DATE

_[signature]_
JOE MCKINNEY
Task Force Officer (TFO)
Drug Enforcement Administration

Sworn to and subscribed before me this ___15th___ day of January, 2019.

_[signature]_
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

10

## LIST OF TELECOMMUNICATION SERVICE PROVIDERS

### SPRINT
### and

| | | | |
|---|---|---|---|
| 01 Communications | Egyptian Telephone | Mid-Atlantic | Socket Telecom |
| Access Line Communication | Electric Lightwave, Inc. | Midvale Telephone Exchange | Spectrum |
| ACN, Inc. | Empire Paging | Mobile Communications | SPRINT |
| ACS | Ernest Communications | Mound Bayou Telephone Co. | SRT Wireless |
| Aero Communications, Inc. (IL) | EZ Talk Communications | Mpower Communications | Star Telephone Company |
| Afford A Phone | FDN Communications | Navigator Telecommunications | Start Wireless |
| Airvoice Wireless | Fibernit Comm | | Sugar Land Telephone |
| Alaska Communications | Florida Cell Service | NE Nebraska Telephone | Sure West Telephone Company |
| Alhambra-Grantfx Telephone | Florida Digital Network | Netlink Comm | Talk America |
| Altice USA | Focal Communications | Network Services | Tele Touch Comm |
| AmeriTel | Frontier Communications | Neustar | Telecorp Comm |
| AOL Corp. | FuzeBox, Inc. | Neutral Tandem | Telepak |
| Arch Communication | Gabriel Comm | Nex-Tech Wireless | Telispire PCS |
| AT&T | Galaxy Paging | Nexus Communications | Telnet Worldwide |
| AT&T Mobility | Global Communications | NII Comm | Tex-Link Comm |
| Bell Aliant | Global Eyes Communications | North Central Telephone | Time Warner Cable |
| Big River Telephone | Global Naps | North State Comm | T-Mobile |
| Birch Telecom | Grafton Telephone Company | Northcoast Communications | Total Call International |
| Blackberry Corporation | Grand River | Novacom | Tracfone Wireless |
| Brivia Communications | Grande Comm | Ntera | Trinity International |
| Broadview Networks | Great Plains Telephone | NTS Communications | U-Mobile |
| Broadvox Ltd. | Harrisonville Telephone Co. | Oklahoma City SMSA | United Telephone of MO |
| Budget Prepay | Heartland Communications | ONE Communications | United Wireless |
| Bulls Eye Telecom | Hickory Telephone | ONSTAR | US Cellular |
| Call Wave | Huxley Communications | Optel Texas Telecom | US Communications |
| Cbeyond Inc. | iBasis | Orion Electronics | US LEC |
| CCPR Services | IDT Corporation | PacBell | US Link |
| Cellco Partnership, d/b/a SPRINT | Illinois Valley Cellular | PacWest Telecom | US West Communications |
| | Insight Phone | PAETEC Communications | USA Mobility |
| Cellular One | Integra | Page Plus Communications | VarTec Telecommunications |
| Cellular South | Iowa Wireless | Page Mart, Inc. | Verisign |
| Centennial Communications | IQ Telecom | Page Net Paging | SPRINT Telephone Company |
| CenturyLink | J2 Global Communications | Panhandle Telephone | SPRINT |
| Charter Communications | Leap Wireless International | Peerless Network | Viaero Wireless |
| Chickasaw Telephone | Level 3 Communications | Pineland Telephone | Virgin Mobile |
| Choctaw Telephone Company | Locus Communications | PhoneTech | Vonage Holdings |
| Cimco Comm | Logix Communications | PhoneTel | Wabash Telephone |
| Cincinnati Bell | Longlines Wireless | Preferred Telephone | Wave2Wave Communications |
| Cinergy Communications | Los Angeles Cellular | Priority Communications | Weblink Wireless |
| Clear World Communication | Lunar Wireless | Puretalk | Western Wireless |
| Com-Cast Cable Comm. | Madison River Communications | RCN Telecom | Westlink Communications |
| Commercial Communications | | RNK Telecom | WhatsApp |
| Consolidated Communications | Madison/Macoupin Telephone Company | QWEST Communications | Windstream Communications |
| Cox Communications | | Sage Telecom | Wirefly |
| Cricket Wireless | Mankato Citizens Telephone | Seren Innovations | XFinity |
| Custer Telephone Cooperative | Map Mobile Comm | Shentel | XO Communications |
| DBS Communications | Marathon Comm | Sigecom LLC | Xspedius |
| Delta Communications | Mark Twain Rural | Sky Tel Paging | Yakdin Valley Telephone |
| Detroit Cellular | Max-Tel Communications | Smart Beep Paging | YMAX Communications |
| Dobson Cellular | SPRINT | Smart City Telecom | Ztel Communications |
| | Metro Teleconnect | | |

**ATTACHMENT 1, TO INCLUDE PROVIDERS OF ANY TYPE OF WIRE AND/OR ELECTRONIC COMMUNICATIONS**           Last Update: 06/21/2018